**IN THE DISTRICT COURT OF THE UNITED STATES FOR THE**

**MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION NO.** |
| **v.** ) | **2:22cv142-MHT** |
| ) | **(WO)** |
| **$2,202.00 IN UNITED STATES** ) | |
| **CURRENCY, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**OPINION AND ORDER**

In this case, the United States seeks forfeiture of the following defendants: two separate sums of U.S. currency, miscellaneous jewelry, and two vehicles. The government asserts that these properties are connected to violations of 21 U.S.C. § 841 and 21 U.S.C. § 846 because they were used to facilitate illegal drug activity or are traceable to proceeds from this activity. The clerk of court entered default against the defendants and all individuals with an interest in them. *See* Entry of Default (Doc. 15).

After the entry of default, the government filed the pending motion for default judgment and decree of forfeiture. Because the allegations in the complaint are undisputed and verified, *see* Verified Complaint (Doc. 1), a hearing is not necessary to enter or effectuate a default judgment. *See SEC v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005). Jurisdiction is proper pursuant to 28 U.S.C. § 1345 (United States as plaintiff) and 28 U.S.C. § 1355(a) (forfeiture). For the reasons set forth below, the government's motion will be granted in part and denied in part.

## I.  DEFAULT-JUDGMENT STANDARD

"When a defendant has failed to plead or defend, a district court may enter judgment by default." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1244 (11th Cir. 2015) (citing Fed. R. Civ. P. 55(b)(2)). "Entry of default judgment is only warranted when there is 'a sufficient basis in the pleadings for the

2

judgment entered.'" *Id.* (citing *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). That is, for a court to enter default judgment, it must conclude that, upon taking all the plausible allegations in the complaint as true and in the light most favorable to the plaintiff, the allegations would amount to a claim upon which relief may be granted. *See id.*

## II. FACTUAL BACKGROUND

The factual allegations of the complaint establish the following facts.

In May 2021, law-enforcement officers saw Jessie Stone drive to an apartment complex in defendant 2017 Hyundai Sonata. Shortly after, they saw another individual arrive at the complex in a Mazda and get into the Sonata. After a brief period of time, the individual returned to his own car and left the complex. Officers then conducted a traffic stop on the

3

Mazda and found various narcotics. Upon questioning the Mazda driver, he admitted that his friend "Jessie" gave him some of the narcotics. He further explained that Jessie fronts him drugs, which the driver would sell and then use the money he makes to pay Jessie back. The driver also told officers that Jessie drives a blue sedan, a white Mercedes, or a white and black Dodge during drug transactions.

In August 2021, officers pulled Stone over in Montgomery, Alabama, and searched him and his car, a Dodge. They found defendant $ 2,202 in Stone's front-left pocket. In the car, they also found defendant $ 14,001 in a bag on the passenger seat of the car and approximately 2.2 pounds of marijuana in a bag behind the driver's seat.

After towing the car, officers gathered all of Stone's possessions from the car. A backpack found on the passenger seat contained various documents, including Stone's passport, as well as defendants

miscellaneous jewelry.  The jewelry is described as a Gents Rolex Datejust model 16014 two-tone watch with 10 total carats of diamonds; a Bentley-inspired 10K yellow-gold pendant with 8.50 total carats of diamonds; a Gents 14k yellow-gold band with 3 total carats of diamonds; and a "J" 14k yellow-gold pendant with 10.92 total carats of diamonds.

When questioned, Stone admitted that he had travelled to Atlanta earlier that evening to buy two pounds of marijuana for $ 1,600.  He also admitted he received methamphetamine from a source who would send him five to ten pounds at a time via Fedex, and whom Stone would pay back in cash.  During a search of Stone's house that day, officers found defendant 1964 Chevrolet Impala in Stone's garage.

A few days later, officers saw Shandra Daniels leave Stone's home driving the blue 2017 Hyundai Sonata, which Stone had driven to the May meeting with the Mazda driver.  Officers approached Daniels in a

5

parking lot. Although the Sonata was registered to her and Stone, Daniels denied owning the vehicle, and officers seized it.

Later that August, an officer contacted the Alabama Department of Industrial Relations and was informed that Stone last held a job in the fourth quarter of 2017, and he earned $ 305 during that quarter. A week later, the department informed the officer that Daniels was last employed during the third quarter of 2020, and she earned $ 2,772 that quarter

### III. DISCUSSION

#### A. Background

The government filed a motion for default judgment and decree of forfeiture against these defendants: $ 2,202 and $ 14,001 in U.S. currency; miscellaneous jewelry; a 1964 Chevrolet Impala; and a 2017 Hyundai Sonata. Generally, to establish a claim for civil forfeiture, the government must prove by a

6

preponderance of the evidence that the property sought is subject to forfeiture. *See* 18 U.S.C. § 983(c)(1) and (2). Moreover, "if the [g]overnment's theory is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the [g]overnment shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3). The complaint sets forth the statutory basis for the requested forfeiture as follows:

> "The defendants are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C), which provide for the seizure and forfeiture of all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical; all proceeds traceable to such an exchange; all moneys, negotiable instruments, and securities used or intended to be used to facilitate the commission of the offenses; and any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 21 U.S.C. §§ 841 and 846."

Verified Complaint (Doc. 1) at 4. The motion for default judgment repeats this statement as the basis

7

for forfeiture. *See* Motion (Doc. 36) at 5. In essence, the government relies on 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 881(a)(6), and then purports to explain what these provisions say. However, the government's description of these statutes is not accurate.

The problem with the government's invocation of § 981(a)(1)(C) is that, while this provision authorizes the seizure of personal property for violations of certain statutes, §§ 841 and 846 of 21 U.S.C. are not listed in the statutes to which subpart (a)(1)(C) of § 981 applies. Therefore, § 981(a)(1)(C) does not authorize forfeiture of any of the property in this case.

The problem with the government's citation to § 881(a)(6) is that the government has not established that some of the non-cash items at issue are subject to forfeiture under this subpart. The statute applies to: (1) "[a]ll moneys ... [and other] things of value

8

furnished or intended to be furnished" in exchange for drugs; (2) "all proceeds traceable" to a drug deal; and (3) "all moneys, negotiable instruments, and securities used or intended to be used to facilitate" a drug offense. 21 U.S.C. § 881(a)(6). The Eleventh Circuit Court of Appeals has treated the term 'proceeds treatable to' as referring to property that is 'traceable to proceeds.' *See United States v. Four Parcels of Real Prop. in Greene & Tuscaloosa Ctys. in State of Ala.*, 941 F.2d 1428, 1442-45 (11th Cir. 1991) (en banc). For the reasons below, the complaint not only generally established a "substantial connection" between the money and the drug offenses, it also correctly pointed to subpart (a)(6) of § 881 as the applicable statute and satisfied its requirements. But the complaint did not satisfy the same as to the jewelry and the Impala. And even though the allegations in the complaint demonstrate the Sonata had a "substantial connection" to the drug offenses, the

9

government cited the wrong provision in § 881, and thus failed to provide adequate notice for default judgment.

## B. The Money

Taken in the light most favorable to the government, the factual allegations in the complaint are sufficient to establish that the $ 14,001 and $ 2,202 in U.S. currency were traceable to or used to facilitate a drug deal. The $ 14,001 was a large sum of money that was found in a car operated by Stone, an alleged drug dealer who had recently traveled to purchase two pounds of marijuana. Officers also found over two pounds of marijuana near the money. The smaller--but still substantial--sum of $ 2,202 in cash was found at the same time as the larger sum, in Stone's pocket. In fact, the $ 2,202 was similar to the amount of money used in previous drug transactions involving Stone. Moreover, Stone had not had on-the-books employment in almost four years, which might otherwise have been the source of the cash.

10

Given these allegations, it would be reasonable to infer that both sums of money fall within the applicable language of § 881(a)(6) because they are proceeds from the sale of drugs, were intended to be used for the purchase of drugs, or were intended to be used to facilitate a drug transaction in violation of §§ 841 and 846.  Accordingly, the court will grant the government's motion for default judgment and decree of forfeiture with regards to the two sums of money.

### C. The Jewelry

The court now turns to the jewelry found in the backpack during the search.  The government does not explain how the jewelry is substantially connected to the drug offense; the government's only allegation about the jewelry is that it was found in an alleged drug dealer's backpack.

More specifically as to § 881(a)(6) and its coverage language, while jewelry is a "thing of value"

11

the allegations in the complaint do not establish that anyone furnished or intended to furnish the jewelry in exchange for drugs or how the jewelry was otherwise traceable to the proceeds of a drug deal. The government did not even state the value of the jewelry, which might provide circumstantial evidence that Stone could not afford the jewelry but for proceeds from a drug deal. Furthermore, jewelry does not fall within § 881(a)(6)'s coverage of "moneys, negotiable instruments, and securities."

Due to these deficiencies, the complaint did not establish that the jewelry was subject to forfeiture under § 881(a)(6). Consequently, the government's motion will be denied as to the jewelry.

### D. The Impala

The court next turns to the 1964 Chevrolet Impala. There are several problems with the government's attempted forfeiture of the Impala. For starters, as with the money, the complaint does not explain how the

12

Impala is substantially connected to the drug offense; the only allegation about the Impala is that it was found in alleged drug dealer's garage.

And again, more specifically as to § 881(a)(6), while an Impala is a "thing of value" the allegations in the complaint do not establish that anyone furnished or intended to furnish the Impala in exchange for drugs; the complaint also does not explain how the Impala is traceable to the proceeds of a drug deal. Moreover, an Impala does not fall within § 881(a)(6)'s coverage of "moneys, negotiable instruments, and securities."

In light of these deficiencies, the complaint fails to make the necessary showing for forfeiture of the Impala under § 881(a)(6). As a result, the government's motion will be denied as to the Impala.

13

## E. The Sonata

The court will now turn to the 2017 Hyundai Sonata. The complaint states that the Sonata was used to facilitate drug transactions, thus establishing a "substantial connection" between the car and the drug offenses. However, the allegations in the complaint do not demonstrate that the Sonata is subject to forfeiture under the coverage language of subpart (a)(6) of § 881. Even though a Sonata is a "thing of value," the complaint does not establish that anyone furnished or intended to furnish the Sonata in exchange for drugs; the complaint also does not explain how the Sonata is traceable to the proceeds of a drug deal. Moreover, a Sonata does not fall within § 881(a)(6)'s coverage of "moneys, negotiable instruments, and securities."

While the factual allegations would likely be sufficient to establish that the Sonata is subject to forfeiture under another subpart of § 881, the

14

government does not cite that subpart. Subpart (a)(4) of 21 U.S.C. § 881 authorizes the forfeiture of "[a]ll conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of" controlled substances. This subpart authorizes forfeiture of a car used to transport drugs; whereas subpart (a)(6) of § 881, on which the government relies, does not.

Due to these deficiencies, the complaint did not provide proper notice of the basis for the forfeiture of the Sonata. Consequently, the government's motion will be denied as to the Sonata.

### F. The Court's Concerns

Finally, the court wishes to note some concerns that it has about the government's conduct. This is not the first time that the government has misstated or relied

incorrectly on the wrong civil forfeiture provision. *See*, *e.g.*, *United States v. A 2023 Dodge Challenger Bearing Vin: 2C3CDZFJ0PH511708, With All Appurtenances and Attachments Thereon*, No. 2:24-cv-211-MHT, 2024 WL 5375183, at *1 (M.D. Ala. Oct. 1, 2024) (Thompson, J.) ("[T]here are problems with the complaint and the motion for default judgment: they rely upon statutes that do not apply, they incorrectly describe the contents of the statutes they cite, and they do not cite or mention the statutory provision that actually authorizes the seizure of the car."). The court is troubled that the government has yet again made these errors. Therefore, the court feels obligated to take up this issue with the government.

    Accordingly, it is ORDERED that:

    (1) The government's motion for default judgment (Doc. 36) is granted in part and denied in part.

16

(2) Default judgment will be entered against defendants $ 2,202 and $ 14,001 in United States Currency.

(3) Default judgment is denied as to these defendants: the 1964 Chevrolet Impala, VIN: 41767S185721, with all appurtenances and attachments; the 2017 Hyundai Sonata, VIN: 5NPE24AF5HH509817, with all appurtenances and attachments; miscellaneous jewelry, namely: Gents Rolex Datejust Model 16014 two-tone watch with 10 total carats of diamonds; Miscellaneous Jewelry, namely: Bentley Inspired 10K yellow gold pendant with 8.50 total carats of diamonds; miscellaneous jewelry, namely: Gents 14k yellow gold band with 3 total carats of diamonds; and miscellaneous jewelry, namely: "J" 14k yellow gold pendant with 10.92 total carats of diamonds.

(4) By February 13, 2025, the government shall file a response to this order addressing the above in paragraph numbered (3) and proposing the next steps as

to these defendants, as well as the government's continued mis-citation and non-citation.

An appropriate default judgment and decree of forfeiture will be entered as to defendants $ 2,202 and $ 14,001 in United States Currency.

This case is not closed.

DONE, this the 6th day of February, 2025.

                                    /s/ Myron H. Thompson
                                  UNITED STATES DISTRICT JUDGE